IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JUDITH K. STANLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-3240 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

JEANNE E. SCOTT, U.S. District Judge:

Plaintiff Judith Stanley appeals from a final decision of the Social Security Administration (SSA) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act.  See 42 U.S.C. §§ 416(I) & 423.  Stanley brings this appeal pursuant to 42 U.S.C. § 405(g).  The parties have filed cross-motions for summary judgment or affirmance pursuant to Local Rule 8.1(D).  Plaintiff's Motion for Summary Judgment (d/e 10); Defendant's Motion for Summary Affirmance (d/e 14).  For the reasons set forth below, Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Affirmance is allowed.  The decision

1

of the SAA is affirmed.

STATEMENT OF FACTS

Stanley was born April 22, 1954. She obtained a general equivalency diploma (GED) and can read and write in English. She has past relevant work as a child monitor, a kitchen helper, a bartender, and a parcel post clerk. Answer (d/e 7), Attachments 1 - 12, Exhibit, Administrative Record (A.R.), p. 25.[1] She filed the instant application for DIB on November 7, 2005, with a date last insured of June 30, 2005. Her claim was denied initially and on reconsideration. Stanley requested an administrative hearing, which was held October 11, 2006. The Administrative Law Judge (ALJ) heard testimony from Stanley and vocational expert Dennis Costotsan. A.R. at 28-66. In a decision dated October 31, 2006, the ALJ determined that Stanley could perform jobs that exist in significant numbers in the national economy and denied her request for DIB. A.R. at 8-27.

In reaching this conclusion, the ALJ followed the five-step analysis set out in 20 C.F.R. § 404.1520. The analysis requires a sequential evaluation

---

[1] Because the Administrative Record contains consecutive internal page numbers in the lower right hand corner of each page, the Court will cite to it by the internal page numbers, rather than by the page numbers assigned by the Court's electronic filing system.

of: (1) whether claimant is engaged in substantial gainful activity; (2) the severity and duration of claimant's impairment; (3) whether the impairment equals a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1; (4) whether the impairment prevents claimant from doing her past relevant work; and (5) whether claimant can perform other work, given her residual functional capacity, age, education, and work experience. The claimant has the burden of presenting evidence and proving the issues on the first four steps. The SSA has the burden on the last step; the SSA must show that, considering the listed factors, there are a significant number of jobs in the national economy that the claimant is capable of performing. <u>Liskowitz v. Astrue</u>, 559 F.3d 736,742-43 (7th Cir. 2009).

The ALJ determined that Stanley met her burden on the first two steps of the analysis. The ALJ found that Stanley had not engaged in substantial gainful activity since September 29, 2003. A.R. at 13. The ALJ, noting that he was giving her the benefit of the doubt, found that Stanley suffered from the following severe impairments: degenerative disc disease and depression. <u>Id</u>. at 13-14. The ALJ next concluded that Stanley failed to demonstrate any impairment severe enough to equal an impairment listed on Appendix 1 (step three). The ALJ then considered whether Stanley

retained the residual functional capacity to perform her past relevant work (step four). The ALJ concluded that Stanley retained the residual functional capacity to perform light work, involving only simple two and three step instructions. A.R. at 15. Based on this residual functional capacity, the ALJ determined that Stanley had met her burden at step four in establishing that she was unable to perform her past relevant work. A.R. at 25.

The ALJ proceeded to step five, i.e., the analysis of whether Stanley could perform a significant number of jobs that exist in the national economy. The ALJ noted that Stanley was fifty-two years old at the time of the Decision and, thus, would be considered an individual closely approaching advanced age. The ALJ further noted that transferability of job skills was not material to the disability determination "because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled', whether or not the claimant has transferable job skills." A.R. at 25.

The ALJ determined that Stanley could make a successful adjustment to other work that exists in significant numbers in the national economy. A.R. at 25-26. Thus, the ALJ concluded that Stanley was not disabled under the Social Security Act, and her request for DIB was denied. The ALJ

4

noted that he was required to consider Stanley's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Grid Rules. The ALJ recognized that, if a claimant can perform all or substantially all of the demands at a given level of exertion, the Medical-Vocational Grids would direct a conclusion of "disabled" or "not disabled" based on the claimant's vocational profile. The ALJ further recognized that, when a claimant cannot perform substantially all of the exertional demands of work at a given level and/or when the claimant has additional nonexertional limitations, the Medical-Vocational Grids provide a framework for decision-making. A.R. at 26.

The ALJ determined that Stanley's ability to perform the full range of light work was "impeded by additional limitations." A.R. at 26. Thus, the ALJ relied on testimony from a vocational expert to determine the extent to which Stanley's limitations eroded the unskilled light occupation base. The ALJ noted that the vocational expert testified that an individual with Stanley's limitations would be able to perform the following representative occupations:

> commercial cleaner (11,051 jobs exist in Illinois at the light exertional level); hotel room cleaner (15,635 jobs exist in Illinois at the light exertional level); pari-mutuel ticket checker (3069

5

jobs exist in Illinois at the sedentary exertional level); telephone interviewer (1398 jobs exist in Illinois at the sedentary exertional level); general office clerk (2818 jobs exist in Illinois at the sedentary exertional level); assembler (2993 jobs exist in Illinois at the sedentary exertional level); production inspector (596 jobs exist in Illinois at the sedentary exertional level); industrial labor sorter (2033 jobs exist in Illinois at the sedentary exertional level); and hand packager (830 jobs exist in Illinois at the sedentary exertional level).

A.R. at 26. The ALJ characterized the vocational expert's testimony as consistent with the information contained in the Dictionary of Occupational Titles.

Stanley appealed the ALJ's Decision to the SSA Appeals Council. A.R. at 7. On August 29, 2008, the Appeals Council denied Stanley's request for review, stating that it found "no reason under [its] rules to review the Administrative Law Judge's decision." A.R. at 1. Thus, the ALJ's Decision became the final decision of the SAA. Stanley then timely filed the Complaint (d/e 1) in the present case.

## ANALYSIS

This Court will reverse the decision of the SSA if that decision is not supported by substantial evidence or results from an error of law. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). This Court reviews the ALJ's factual findings to determine whether they are supported by substantial

evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The issue before this Court is whether the ALJ's findings were supported by substantial evidence and not whether Stanley is disabled. Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003). The ALJ must at least minimally articulate his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). This Court must not reweigh the evidence and should affirm as long as the ALJ "identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion." Giles ex rel. Giles v. Astrue, 483 F.3d 483, 486 (7th Cir. 2007). If, however, "the ALJ's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." Id. (internal quotations and citation omitted).

Stanley seeks reversal of the SAA's Decision, arguing that the ALJ

7

erred at step five of the analysis by failing to apply the Medical-Vocational Grid Rules as a framework and by considering inapplicable occupations in concluding that a significant number of jobs existed to which Stanley could adjust. Given Stanley's argument, a detailed analysis of Stanley's medical history is not necessary. The Court focuses its attention on step five and the related evidence.

The ALJ determined that Stanley retained the residual functional capacity to perform light work, involving only simple two and three step instructions. A.R. at 15. The Medical-Vocational Grids are, therefore, not controlling, because they take into account only exertional impairments and not nonexertional impairments such as difficulty concentrating or remembering. See Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005); see also 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(d) ("If an individual's specific profile is not listed within this Appendix 2, a conclusion of disabled or not disabled is not directed."). Stanley acknowledges this. However, she asserts that the Grids must be used as a "framework" for decision, citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(d) & (e)(2) and corresponding policy statements, SSR 83-12 & 83-14. The regulations explain as follows:

> [W]here an individual has an impairment or combination of

8

> impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2).

Under the Medical-Vocational Grids, an individual closely approaching advanced age, with a high school education and no transferable skills, who is limited to a full range of sedentary work is deemed to be disabled. 20 C.F.R. Pt. 404, Subpart P, § 201.14. Under the Medical-Vocational Grids, an individual closely approaching advanced age, with a high school education and no transferable skills, who can perform a full range of light work is deemed to be not disabled. 20 C.F.R. Pt. 404, Subpart P, § 202.14.

Vocational expert Costotsan testified at the administrative hearing. The ALJ asked him to consider an individual of the same age, education, and work experience as Stanley, who was limited to light work with simple tasks of two to three-step instructions. A.R. at 57. Costotsan testified that

9

such an individual would be unable to perform any of Stanley's past relevant work. Costotsan testified that there would be other jobs in the economy that such an individual could perform, including the representative occupations of building cleaner (11,051 positions in the state of Illinois) and hotel room cleaner (15,635 positions in the state of Illinois). A.R. at 58.

> The ALJ then asked the following question:
>
> I'd like you to change the exertional level down to sedentary with a sit/stand option. First, we're going to only -- that'll be the only restriction the simple tasks because three-step instructions will not be included. So just sedentary sit/stand option. Are there jobs in the economy such an individual could perform?

A.R. at 59. Costotsan replied with representative examples of unskilled sedentary jobs including ticket checkers, telephone interviewers, unskilled general office clerks, some production inspection jobs, and some production assembly jobs. The ALJ inquired as to what would occur if a limitation to simple tasks of two to three step instructions was added. Costotsan responded that only the production inspection and production assembly jobs would remain available. Costotsan added that some sorting jobs and some hand packaging jobs would also be available, but noted that this would be an exhaustive list for an individual limited to sedentary work with a

10

sit/stand option and simple tasks of two to three step instructions.

Upon examination by Stanley's attorney, Costotsan testified that a limitation to simple tasks of two to three step instructions would significantly compromise the light occupational base. A.R. at 62-63. Costotsan explained that, essentially, simple light jobs include cleaning activities, certain unskilled agricultural or grounds keeping jobs, and industrial/manufacturing jobs. Costotsan specifically testified that "it's quite a limited number." A.R. at 63. When asked the number of sedentary and light jobs available with a limitation to simple tasks of two to three step instructions, Costotsan testified that it would be below 200 classifications, based on the fact that many of the sedentary assembly inspection type jobs fall within a few Dictionary of Occupational Title classifications.

Stanley asserts that the ALJ failed to build an accurate and logical bridge between the vocational expert's testimony that the occupational base was eroded to a level substantially less than 200 occupations and the conclusion that there was a significant number of jobs to which Stanley could adjust. As Stanley points out, the regulations note that there are approximately 200 separate unskilled sedentary occupations, each with a number of positions or jobs. 20 C.F.R. Pt. 404, Subpart P, § 201.00(a). An

individual closely approaching advanced age who is limited to a full range of unskilled sedentary work is deemed to be disabled under the Grids. 20 C.F.R. Pt. 404, Subpart P, § 201.14. Thus, Stanley argues, she has far fewer occupations available to her than a person who is deemed disabled under the Grids, a disparity that she claims the ALJ should have addressed. Stanley further argues that the ALJ erred in relying on the sedentary positions listed in the October 31, 2006, order in determining that there was a significant number of jobs to which Stanley could adjust. See A.R. at 26.

Policy statement SSR 83-14 is designed to clarify the way in which the Grids "provide a framework for decisions concerning persons who have both a severe exertional impairment and a nonexertional limitation or restriction." SSR 83-14 at *1.[2] According to SSR 83-14, "[a]fter it has been decided that an impaired person can meet the primary strength requirements of sedentary, light, or medium work . . . a further decision may

---

[2]Stanley also cites SSR 83-12. SSR 83-12 is designed to clarify policies applicable in using the Grids as a framework for adjudicating claims in which an individual has only exertional limitations and no specific rule applies because the individual's residual functional capacity does not coincide with any one of the defined exertional ranges of work. SSR 83-12 is inapplicable, given the ALJ's residual functional capacity determination, which Stanley does not challenge.

12

be required as to how much of this potential occupational base remains, considering certain nonexertional limitations which the person may also have." Id. at *2. Under SSR 83-14, "[w]here a person cannot be found disabled based on strength limitations alone, the rule(s) which corresponds to the person's vocational profile and maximum sustained exertional work capability . . . will be the starting point to evaluate what the person can still do functionally." Id. at *3. Specifically:

> A particular additional exertional or nonexertional limitation may have very little effect on the range of work remaining that an individual can perform. The person, therefore, comes very close to meeting a table rule which directs a conclusion of "Not disabled." On the other hand, an additional exertional or nonexertional limitation may substantially reduce a range of work to the extent that an individual is very close to meeting a table rule which directs a conclusion of "Disabled."

Id. SSR 83-14 further notes that, in complex situations, the assistance of a vocational resource, including vocational expert testimony, may be necessary. Id. at *4.

The ALJ expressly recognized that the Grids are used as a framework in cases where a claimant cannot perform substantially all of the exertional demands of work at a given level and/or when the claimant has additional nonexertional limitations. A.R. at 26. The ALJ also correctly noted that, if

13

Stanley had the ability to perform a full range of light work, the Grids would direct a finding of "not disabled." Id.  The ALJ correctly used the light work grid as a starting point, in accordance with SSR 83-14.  The ALJ determined that Stanley's ability to perform all or substantially all of the requirements of light work was impeded by additional limitations.  Thus, the ALJ stated that, in order to determine the extent to which Stanley's additional limitations eroded the unskilled light occupational base, he asked the vocational expert whether jobs existed for an individual of Stanley's age, education, work experience, and residual functional capacity.

The ALJ then noted that the vocational expert testified that an individual with Stanley's limitations would be able to perform the following occupations: commercial cleaner (light exertional level); hotel room cleaner (light exertional level); pari-mutuel ticket checker (sedentary exertional level); telephone interviewer (sedentary exertional level); general office clerk (sedentary exertional level); assembler (sedentary exertional level); production inspector (sedentary exertional level); industrial labor sorter (sedentary exertional level); and hand packager (sedentary exertional level). A.R. at 26.  This statement is not wholly supported by the record evidence.

In rendering his opinion, the ALJ determined that Stanley retained the

14

residual functional capacity to perform light work, involving only simple two and three step instructions. A.R. at 15. The vocational expert testified that an individual who was limited to light work involving only simple two and three step instructions could perform the representative occupations of commercial cleaner and hotel room cleaner.[3] A.R. at 58. The vocational expert expressly testified that a limitation to simple two and three step instructions would eliminate the sedentary positions of ticket checker, telephone interviewer, and general office clerk. A.R. at 59-60. The ALJ mischaracterized the vocational expert's testimony with respect to these three positions. Thus, the record evidence supports a finding that Stanley was able to perform commercial cleaner, hotel room cleaner, assembler, production inspector, industrial labor sorter, and hand packager positions.[4] Of these positions, only commercial cleaner and hotel room cleaner are

---

[3]Upon examination by Stanley's attorney, the vocational expert testified that the limitation to simple tasks of two to three step instructions would significantly compromise the light occupational base. A.R. at 62-63. He noted that such a restriction would eliminate clerical jobs and service jobs dealing with people. A.R. at 63. He noted that some cleaning activities, certain unskilled agricultural jobs, and industrial/manufacturing jobs remained available. Id.

[4]The Court notes that the assembler, production inspector, industrial labor sorter, and hand packager positions were identified in response to a hypothetical that included an additional limitation of a sit/stand option. However, they would also be available to someone without such a limitation.

15

classified at the light exertional level. The remaining positions are classified as sedentary.

If Stanley were able to perform the full range of sedentary work (200 occupations), but no light work, the Grids would dictate a finding of disabled. When the Grids apply and direct a finding of disabled, an ALJ cannot rely upon vocational expert evidence to reach a conclusion to the contrary. See Haynes v. Barnhart, 416 F.3d 621, 627 (7th Cir. 2005). Thus, the fact that Stanley can perform four sedentary occupations would not support a conclusion that she is not disabled. The Commissioner argues that any error relating to inclusion of the sedentary positions in the ALJ's Decision is harmless because the record evidence establishes that commercial cleaner and hotel room cleaner positions exist in significant numbers in Illinois, with over 26,000 combined jobs available. The Court agrees.

The harmless error doctrine applies to cases seeking review of a determination of disability by the SSA. See Keys v. Barnhart, 347 F.3d 990, 994-95 (7th Cir. 2003). The regulations direct the ALJ to use the Medical-Vocational Grid Rules as a framework for decision-making. The ALJ determined that Stanley could perform light work with the

nonexertional limitation to tasks involving simple two and three step instructions. Thus, under SSR 83-14, the Grid relating to light work would be the starting point for evaluating the range of work available to Stanley. If Stanley were able to perform the full range of light work (approximately 1,400 occupations), the Grids would direct a finding of not disabled. See 20 C.F.R. Pt. 404, Subpart P, § 202.00(a). The ALJ recognized the need to determine the extent to which Stanley's limitations eroded the light work occupational base. A.R. at 26. While Stanley's nonexertional limitations significantly compromised the light occupational base, it is undisputed that over 26,000 light work jobs were available in Illinois for an individual with Stanley's limitations. Id. This is a significant number of positions. See Liskowitz, 559 F.3d at 743 ("it appears to be well-established that 1,000 jobs is a significant number"); Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993) (holding that the claimant's contention that 1,400 job positions are not a significant number is unsupported by case law). The fact that the ALJ identified additional inapplicable occupations does not diminish the large number of positions available. The ALJ used the correct legal standard and there is adequate evidence in the record to support his conclusion that there was a significant number of jobs to which Stanley could adjust. Reversal is

not appropriate.

## CONCLUSION

THEREFORE, for the reasons set forth above, Plaintiff's Motion for Summary Judgment (d/e 10) is DENIED, and Defendant's Motion for Summary Affirmance (d/e 14) is ALLOWED. The Decision of the Commissioner is AFFIRMED. All pending motions are denied as moot. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: March 31, 2010

    FOR THE COURT:

                        s/ Jeanne E. Scott
                        JEANNE E. SCOTT
                        UNITED STATES DISTRICT JUDGE